In re Fred P. AYRE, Jr. and Marie A. Ayre, Debtors.

Bankruptcy No. 82–02886 T.

United States Bankruptcy Court, E.D. Pennsylvania.

Dec. 3, 1984.

James J. Narlesky, Easton, Pa., for debtors.

Stephen Raslavich, Blue Bell, Pa., for Girard Bank.

Michael J. Connolly, Reading, Pa., for John Deere Co.

Richard C. Ruben, Harrisburg, Pa., for Gable's, Inc.

Alfred S. Pierce, Nazareth, Pa., for Second Nat. Bank of Nazareth.

Frederick L. Reigle, Reading, Pa., Trustee.

## MEMORANDUM OPINION

THOMAS M. TWARDOWSKI, Bankruptcy Judge.

Presently before us is Girard Bank's application for an order directing trustee to distribute funds held in escrow to Girard Bank ("Girard"). The funds in question constitute $76,000.00, the amount that was realized from the trustee's public sale of a parcel of the Chapter 7 debtors' real estate. Briefly, Girard's claimed entitlement to these funds results from the following circumstances. In June, 1982, the debtors herein filed a Chapter 13 bankruptcy petition, which was converted by the debtors to Chapter 7 in August, 1983. Also in June, 1982, two companies wholly owned by the debtors, Ayres Equipment and Service Company, Inc. ("Ayres") and F.E. Weinland Company ("Weinland"), filed Chapter 11 bankruptcy petitions. Weinland is a wholly owned subsidiary of Ayres. Prior to any of these bankruptcy filings, Girard had loaned $136,000.00 to Ayres. Both Weinland and the debtors guaranteed repayment of Ayres' debt to Girard. Both Ayres and Weinland pledged their inventory, *inter alia*, as security for the loan. Upon Ayres' default, Girard, within two months prior to all of the bankruptcy filings, entered judgments against Ayres, Weinland, and the debtors in all counties in which real or personal property owned by any of them was known to exist.

A few months after the three aforementioned bankruptcy filings, Girard filed, pursuant to 11 U.S.C. § 362(d), complaints for relief from the automatic stay against both Ayres and Weinland. At that time, Girard was owed approximately $130,000.00 by Ayres and the same amount by Weinland and the debtors as guarantors. The two § 362(d) actions were consolidated for trial. At the trial, conflicting evidence was presented as to whether or not Girard was fully secured by the combined Ayres and Weinland inventory collateral. The Court never made a finding on this issue because the parties to the § 362(d) actions eventually resolved each action by a stipulated set-

tlement ("the Stipulations"). Also, the Stipulations did not stipulate as to the value of the inventory collateral. However, the Stipulations provided, *inter alia*, for the present debtors (who signed the Stipulations but were not, of course, parties to the § 362(d) actions) to provide additional collateral to Girard in the nature of a mortgage on an unencumbered 22.5 acre tract of farm land ("the farm"). Ayres and Weinland have never had any property interest in the farm.

Pursuant to the Stipulations, the debtors filed, in November, 1982, an application to convert Girard's judicial lien against the farm to a mortgage. Girard did not join in this application. The debtors were still in Chapter 13 when this application was filed and several creditors objected to it. In October, 1983, subsequent to the debtors' conversion to Chapter 7, the trustee held a public sale, to which no one objected, of several of the debtors' parcels of real property, including the farm. The farm sold for $76,000.00, to which Girard claims it is entitled, but which the trustee has held in escrow since the sale, refusing to release it to Girard.

For unknown reasons, the debtors' aforementioned application to convert judicial lien to mortgage was not noticed to be heard until November 3, 1983, at which time a hearing date of November 18, 1983 was set. However, by a letter to the Clerk of Court dated November 15, 1983, the debtors' counsel withdrew this application, and, therefore, no hearing on the application was ever held and no ruling on the application was ever made by the Court. On December 12, 1983, Girard filed the instant application, to which three of the debtors' creditors have objected.

The debtors owe Girard approximately $80,000.00.

Girard's application is premised upon its belief that it is equitably entitled to the status of a mortgagee as to the farm. Therefore, argues Girard, we should find that the $76,000.00 is being held in a constructive trust for the benefit of Girard and must be turned over to Girard by the trustee.

Girard's belief that it is entitled to the status of a mortgagee stems from the debtors' agreement in the Stipulations to execute a mortgage on the farm in favor of Girard subject to Court approval and to seek Court approval of their granting of the mortgage. Girard essentially reasons that the debtors' agreement thereto was a necessary element of the Stipulations' providing of adequate protection to Girard's secured interest in the property of Ayres and Weinland. Girard further contends that the Stipulations were necessary in order for Ayres and Weinland to stay in business. Ayres and Weinland were the chief source of the debtors' income and the debtors were in Chapter 13 at the time of the Stipulations. Therefore, continues Girard, the granting of the mortgage to Girard would have benefitted the debtors' creditors by giving the debtors more money with which to pay the creditors' claims. Girard further argues that we must look at the situation as it existed in the autumn of 1982, when the Stipulations were made and the debtors' application to convert judicial lien to mortgage was filed.

For the following reasons, we conclude that Girard has clearly failed to meet its burden of proof with respect to its application. In the first place, as pointed out *supra*, no determination was ever made as to whether or not Girard was fully secured in the § 362(d) actions. Girard has never proven that it was entitled to any additional security, in the form of a mortgage on the debtors' farm or otherwise. Secondly, Girard's contention that the Stipulations were necessary in order for Ayres and Weinland to stay in business at that time is unprovable. In fact, both Ayres and Weinland ceased doing business within several months after the Stipulations were signed. Thirdly, and perhaps most importantly, there is absolutely no proof that the debtors' creditors ever stood to benefit from the Stipulations and the intended results of the Stipulations, even as of the autumn of 1982. Such an allegation by Girard is pure speculation. Of course, it is patently obvi-

ous that those creditors would now be harmed if we were to grant Girard's application, inasmuch as Girard's aforementioned judicial lien against the farm is indisputably an avoidable preference under 11 U.S.C. § 547. We also note that none of the debtors' creditors (except Girard) was a party to the § 362(d) actions and there is no proof that any of them would have approved of the Stipulations.

For all of the foregoing reasons, Girard's application shall be denied.